UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RUSSEL LEE ORR,

        Petitioner,

v.                                Case No.  3:21-cv-752-BJD-LLL
                                               3:15-cr-67-BJD-LLL

UNITED STATES OF AMERICA,

        Respondent.

_____

## **<u>ORDER</u>**

### **I. STATUS**

Petitioner, Russel Lee Orr (Orr), a federal inmate, is proceeding through counsel on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Doc. 1; Crim. Doc. 198; Motion).[1] The government filed a Response in Opposition to the Motion (Civ. Doc. 6; Response), and the matter is now ripe for review. Although Orr requests an evidentiary hearing, the Court finds that a hearing is not warranted pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing § 2255 Proceedings.[2]

---

[1] Citations to the record in the civil case will be denoted as "Civ. Doc. __," and citations to the record in the underlying criminal case will be denoted as "Crim. Doc. __." All of the exhibits cited in this Order were filed in the criminal case.

[2] Rule 8(a) of the Rules Governing § 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials to determine whether an evidentiary hearing is warranted before resolving a motion

## II. PERTINENT FACTS AND PROCERURAL HISTORY

Orr's arrest and prosecution stem from a multi-agency undercover operation to "locate individuals who are hoping to meet and have sexual relations with underage persons." Crim. Doc. 66 at 2. As part of that operation, on March 10, 2015, Sergeant Stephen Gazdick, posing as "George Michaels," the purported custodial uncle of a fourteen-year-old deaf girl named "Emily," placed an advertisement on Craigslist, titled "Special Needs Need Special Attention – w4m." Crim. Doc. 189 at 29–35; Gov't Ex. 1. The advertisement stated: "Looking for some help with a special needs situation, must be discreet, safe, and open minded. Please no creepers or fakers, DDF only!" Crim. Doc. 163 at 2; Gov't Ex. 1.

After Orr's initial response to the posting, a series of conversations took place where Orr requested various pictures of Emily, including graphic "[c]lose up" pictures of her genitalia. Crim. Doc. 66 at 2; Crim. Doc. 189 at 34; Gov't Ex. 2. Orr also asked for "a selfie nude pic[ture] with her face in it" because that would "show that this [was not] a police sting operation." Crim. Doc. 189

---

under § 2255. However, "[t]he district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a § 2255 movant is not entitled to an evidentiary hearing "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citations omitted)).

at 42–43; Gov't Ex. 2 at 6, 20.  Orr reasoned the nude pictures would prove this was not "some sort of sting" because "[p]olice don[']t transmit photos of girls naked."  Crim. Doc. 189 at 43; Gov't Ex. 2 at 8.

In addition to contacting the purported uncle for sexually explicit images of Emily, Orr also started exchanging text messages and emails directly with the purported fourteen-year-old girl.  Crim. Doc. 189 at 40–52; Gov't Ex. 2 at 10–21; Gov't Exs. 3–8, 27.  Orr continued asking for "private" pictures of Emily "to make sure it[']s not a police sting operation . . . due to [the] age difference of [Emily being] under 18," to which she responded: "[I'm] not 18, [I'm] 14." Crim. Doc. 189 at 58; Gov't Ex. 27 at 3–4.  For the next two months, Orr continued to solicit sexually explicit photos of Emily and described the sexual acts he wanted to engage in with her.  Gov't Ex. 27 at 5–6, 10, 25, 29, 32–33, 38–39, 41, 49–50, 57.  During their communications, Emily asked Orr if he was "one of those role playing fantasy guys who keep faking [her] out online," and Orr responded that he was "very real" and really wanted to "explore [her] first time with a man and teach [her] everything."  Crim. Doc. 189 at 66; Gov't Ex. 27 at 10.

On May 21, 2015, law enforcement executed a search warrant for Orr's apartment, arrested him, and interviewed him after he waived his *Miranda* rights.  Crim. Doc. 189 at 161–62.  In his interview, Orr admitted that he texted

3

an underage girl, but insisted that it was merely role-playing and fantasy, and he would not have traveled to meet her under any circumstances.  Crim. Doc. 189 at 162–68; Gov't Ex. 20A at 17, 19, 22–23, 31, 36, 71, 85.  On June 3, 2016, a superseding indictment charged Orr with one count of attempted online enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b) (Count One); one count of attempting to produce child pornography via the internet in violation of 18 U.S.C. § 2251(a) and (e) (Count Two); and eight counts of advertising for child pornography via the internet in violation of 18 U.S.C. § 2251(d)(1)(A), (d)(2)(B), and (e) (Counts Three through Ten).  Crim. Doc. 75.

On July 1, 2016, a jury convicted Orr as charged on all counts.  Crim. Doc. 113.  On April 16, 2018, this Court sentenced him to a term of imprisonment of 180 months on each count, with all such terms to run concurrently, followed by a ten-year term of supervised release.  Crim. Doc. 175.  Following this Court's denial of Orr's motions for new trial and for judgment of acquittal, he appealed, through counsel, to the Eleventh Circuit Court of Appeals.  Crim. Doc. 163; Crim. Doc. 190 at 121, 147.  On July 1, 2020, the Eleventh Circuit issued an unpublished decision, affirming Orr's convictions and sentences.  Crim. Docs. 177, 196; *United States v. Orr*, 819 F. App'x 756 (11th Cir. 2020) (*per curiam*).  The mandate was issued on July 30,

4

2020.  Crim. Doc. 197 at 2.  Orr filed the instant § 2255 Motion on July 29, 2021.  Civ. Doc. 1; Crim. Doc. 198.

### III.  LEGAL STANDARDS

A person in federal custody may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  In short, only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  *United States v. Addonizio*, 442 U.S. 178, 184–85 (1979).  The movant "bears the burden to prove the claims in his § 2255 motion."  *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015); *see also Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017) (collecting cases).

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel."  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (*per curiam*) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  A claim that a criminal defendant has received ineffective assistance of counsel in violation of the Sixth Amendment "may be

5

brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's conduct amounted to constitutionally deficient performance; and (2) counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687–88. To satisfy the "performance" prong, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness," *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 688), which is a highly deferential standard, *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689–90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989) (*per curiam*) (same).

As observed by the Eleventh Circuit:

[The test for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the

circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted).

To satisfy the "prejudice" prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Martin*, 949 F.3d at 667 (citing *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

A court considers the totality of the evidence in determining whether the *Strickland* test has been satisfied. *Id.* at 695. If a petitioner makes an insufficient showing on one prong, the court need not reach the other prong. *Id.* at 697; *see also Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010) (stating that "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa"). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

## IV. DISCUSSION

As his sole ground for relief, Orr argues that his trial counsel was ineffective, because: (1) he proposed a legally insufficient jury instruction about a role-play/internet fantasy defense; and (2) he failed to establish the proper predicate for such an instruction by failing to call Suzonne Kline, Ph.D. as an expert witness at the trial.[3]  Civ. Doc. 1 at 4, 19–30.

The proposed jury instruction, which was requested by Orr's counsel at the trial, read as follows:

> A major component of the entertainment on the Internet is the rapid repartee, in addition to having imaginative fun.  When engaging in Internet role-play, people love to experiment with their personas.  Typically, people weave a bit of truth about themselves with a great deal of imagination and/or exaggeration. Sexually explicit conversations tend to drive the chatting relationship, and are fueled by the anonymity of the created personas.  Often, chatters become curious about who is "behind the screen."  There are many methods chatters use to "de-mask" the other participant: such as asking for a photograph, attempting a phone conversation, asking for information that can be independently verified or even attempting to meet in a public space.[4]

_____

[3] Dr. Kline testified as an expert for the defense at Orr's sentencing hearing. Crim. Doc. 192 at 37–145.

[4] This entire paragraph was apparently taken verbatim, except for the omission of one sentence, from *United States v. Joseph*, which described the proposed expert testimony of Dr. Herriot in that case.  542 F.3d 13, 22 (2d Cir. 2008), *abrogated in part on other grounds by United States v. Ferguson*, 676 F.3d 260, 276 n.14 (2d Cir.

> The Defendant has claimed that he was merely role playing or living out a fantasy and that he believed it was an adult pretending to be a child and that he had no intent to entice or coerce anyone under 18 years old to engage in any sexual activity.
>
> ANNOTATIONS AND COMMENTS
> *See generally Friedlander v. United States*, 570 F. App'x 883 (11th Cir. 2014)[.]

Crim. Doc. 87 at 25 (citation modified).  Orr's counsel asked this Court to give this instruction to the jury in light of Orr's post-arrest statements of role-playing and fantasy.  Crim. Doc. 190 at 132–33.  The government objected by stating:

> It's not in the pattern instructions.  That defense is not a defense.  It's essentially an attack on [Orr's] specific intent or his general intent to commit the crime, which is subsumed into other instructions that the Court has indicated that it would give, and so we would object to that instruction.

Crim. Doc. 190 at 133.

This Court agreed with the government and noted that "the pattern instructions . . . subsume[d] sufficient direction to the jury on the issue of

---

2011).  In *Joseph*, the Second Circuit "urge[d] the District Court to give a more thorough consideration to the defendant's claim to present Dr. Herriot's testimony, in the event it is offered at retrial," because his "field of study and experience qualified him to offer relevant testimony" about "role-playing in the context of sexually explicit conversations on the Internet" and his "opinions appear[ed] to be highly likely to assist the jury 'to understand the evidence.'"  542 F.3d at 21–22 (citing, *inter alia*, Fed. R. Evid. 702).

specific intent and intent generally." Crim. Doc. 190 at 133–34. This Court
also stated:

> [T]his particular proposed instruction goes beyond . . . what the
> case of *Friedlander versus United States*, upon which it's arguably
> based, stands for. That case involved some expert testimony . . . .
> There certainly has been no expert testimony in this case involving
> role-playing.
>
> And, moreover, I believe that the instruction includes evidence
> that is both the subject of expert -- the need for expert testimony,
> or at least principles, and now couched as instructions on law that
> are beyond the purview of the case, the *Friedlander* case
> specifically, but beyond the scope of the evidence that's been
> presented in this case, so in that regard it would be improper as
> well.

*Id.* at 134.

Although this Court did not give the requested instruction to the jury,

Orr's counsel presented the role-play/fantasy defense during closing argument,

by stating:

> There was testimony about role-playing and fantasy, and I submit
> to you that when Mr. Orr was questioned by law enforcement in
> this particular case, he said he was goofing around. He said it was
> role-play. He said it was fantasy.

*Id.* at 167.

On appeal, the Eleventh Circuit rejected Orr's challenge to this Court's

failure to provide the proposed defense theory jury instruction. *Orr*, 819 F.

App'x at 768. After noting that the *Friedlander* case dealt with expert

10

testimony related to internet fantasy in child pornography cases, the Eleventh

Circuit stated:

> The first paragraph of Mr. Orr's requested instruction is little more than a defendant-friendly commentary on the evidence. For example, the instruction states that people "typically" weave a bit of truth about themselves with a great deal of imagination, and that sexually explicit conversations "tend to drive the chatting relationship." It is only in the last sentence of the proposed instruction that we get the legally recognizable defense, relating to the lack of the requisite criminal intent: that because "Mr. Orr was merely role playing or living out a fantasy," "he had no intent to enti[c]e or coerce" a minor to engage in sexual activity.
>
> As Mr. Orr conceded at oral argument, the first part of his instruction was too argumentative. And our cases hold that a defendant is not entitled to an instruction that is more in the nature of legal argument or a judicial narrative of his version of the facts than an objective instruction on the law. *See United States v. Barham*, 595 F.2d 231, 244–45 (5th Cir. 1979).[5] The district court therefore did not err by refusing to give his instruction, and had no duty to re-write it. Had the district court done otherwise, it would have impermissibly "place[d] . . . the defendant['s] desired factual findings into the mouth of the court," *United States v. Paradies*, 98 F.3d 1266, 1287 (11th Cir. 1996) (citation omitted), instead of fulfilling its role of providing the jury with neutral guidance about the issues for deliberation.

*Orr*, 819 F. App'x at 769 & n.1 (some internal citations omitted or modified).

Relying in part on the Eleventh Circuit's observations, Orr now argues

"[t]he proposed jury instruction was flawed and legally insufficient" because it

---

[5] All Fifth Circuit decisions entered before October 1, 1981 were adopted by the Eleventh Circuit as binding precedent. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

was "more argument than a proper statement of the law" and "[t]he initial paragraph would have been more appropriately testified to by an expert." Civ. Doc. 1 at 21. Orr argues that based on his post-arrest interview, which was presented to the jury as Gov't Exs. 20 & 20A, there was "ample evidence . . . of his belief that he was engaged in an internet fantasy/role-play conversation and not with an actual conversation with a minor," and in light of this evidence, "the instruction was necessary to clarify [his] intent." Civ. Doc. 1 at 19–20.

However, even without the requested instruction, the jury was properly instructed about the requisite intent to support a conviction in this case. Specifically, as to the elements of attempt in Counts One and Two, the jury was instructed that Orr can be found guilty only if the government proved beyond a reasonable doubt that Orr "acted knowingly and willingly" and "engaged in conduct . . . which strongly corroborate[d] [his] criminal intent." Crim. Doc. 112-1 at 19–20, 24–25. The jury was also properly instructed about entrapment when it was directed to consider whether Orr was persuaded "to commit a crime [he] had no previous intent to commit." *Id.* at 31. These instructions were adequate to instruct the jury about Orr's theory of defense, namely, his lack of intent to entice or coerce a minor to engage in sexual activity because he was merely role-playing or living out an internet fantasy. *See Barham*, 595 F.2d at 245 (stating that although the defendant "was

12

unquestionably entitled to a charge that conveyed the substance of his legal defense [of lack of criminal intent] with sufficient particularity for the jury to intelligently consider it in relation to the evidence presented at trial," nothing more was required here, because the instruction that was actually given by the trial judge adequately and fairly presented the theory of the defense).  Orr was not "entitled to a judicial narrative of his version of the facts," even if such a narrative was the theory of his defense.  *Id.* at 244; *see also Paradies*, 98 F.3d at 1287 (affirming the district court's finding that the requested jury instruction aspired to place "defendants' desired factual findings into the mouth of the court").  Because there is no reasonable probability that a different instruction would have led to a different outcome of the proceedings, Orr's claim of ineffective assistance of counsel fails.  *See Strickland*, 466 U.S. at 694.

Orr also argues that his counsel was deficient for failing to call Dr. Kline to testify at the trial about the prevalence of internet fantasy and role-play. Civ. Doc. 1 at 25.  Citing to *Friedlander*, *Stahlman*,[6] and *Hite*,[7] Orr contends that expert testimony was necessary in order to submit an instruction about

---

[6] *United States v. Stahlman*, 934 F.3d 1199 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 530 (2019).

[7] *United States v. Hite*, 769 F.3d 1154 (D.C. Cir. 2014).

the prevalence of internet fantasy and role-play to the jury. *Id.* Orr argues that although his trial counsel relied on *Friedlander* in the proposed jury instruction, he nevertheless ignored the proposition for which that case stands, namely, that an expert is required in order to have the instruction included. *Id.* at 26.

In *Friedlander*, the trial court refused to allow the expert, Dr. Berlin, to testify about the topic of internet fantasy, but allowed him to testify about his opinion that the defendant was not a pedophile or sexual sadist. 570 F. App'x at 885. The Eleventh Circuit affirmed, stating in relevant part:

> Assuming that Dr. Berlin . . . would have been allowed to testify about Internet fantasy . . . , he would only have been able to tell the jury that (a) sometimes people act out sexual fantasies and take on fictional personas on the Internet, (b) that there are certain factors that he would look at to determine whether someone was simply engaged in fantasies, and (c) that those who engage in fantasies do not do harm to others (including children). Under Rule 704(b), he would not have been able to testify about [defendant's] actual mental state, which was an element of the child enticement offense. . . .
>
> [Defendant] . . . cannot show that Dr. Berlin's testimony would have created a reasonable probability of an acquittal. The evidence at trial showed that [defendant] traveled to meet with the person who turned out to be the undercover officer, and in his car[,] he had some of the devices or instruments he had mentioned in the chats. That strongly suggests a desire to carry out what had been discussed during the online chats. . . . We therefore conclude that [defendant] has failed to satisfy the prejudice prong of *Strickland*.

*Id.* at 885–86.

14

Orr has not shown that his trial counsel was deficient for failing to call Dr. Kline as an expert at the trial or that the purported deficiency prejudiced his defense.  First, Orr has not shown that this Court would have allowed Dr. Kline to provide expert testimony.  Assuming the Court would have allowed Dr. Kline to testify, Orr has not shown that her testimony would have changed the outcome of the proceedings.  Even if Dr. Kline had been called to testify at the trial, as her Affidavit concedes, she would not have been allowed to testify about Orr's actual mental state under Fed. R. Evid. 704(b).  *See* Civ. Doc. 1-2 at 2–3; *Stahlman*, 934 F.3d at 1220 (finding the expert testimony of Dr. Carr to be inadmissible under Fed. R. Evid. 704(b), where the expert opined there was insufficient behavioral evidence to conclude that defendant intended to have real sex with a minor, rather than act out a fantasy involving adults, and the clinical evidence suggested that defendant intended to act out a fantasy, rather than have a sexual contact with a minor).

Relying on *Stahlman* and/or *Hite*, Orr argues that "expert testimony concerning the prevalence of fantasy and role-play on the internet and the psychiatric diagnosis of the defendant does not violate the provisions of Rule 704(b)."  Civ. Doc. 1 at 25.  In dicta, *Stahlman* noted that "general testimony concerning fantasy and role-playing could 'shed light on what may be an unfamiliar topic to most jurors: sexual fantasy involving children, particularly

the kind that unfolds in the virtual realm of the Internet.'" 934 F.3d at 1221 (citing *Hite*, 769 F.3d at 1170 (stating that "expert testimony that generally explains the world of sexual fantasy on the Internet is permissible")). However, this Court agrees with the government that this dictum is neither an endorsement of such testimony nor a constitutional requirement that it be offered.

This Court also notes that in *Hite*, the defendant was not diagnosed with any psychiatric condition associated with sexual attraction to children. *Hite*, 769 F.3d at 1168. Here, although Dr. Kline's Affidavit states that "Orr has no discernible diagnosis or psychiatric condition associated with, or that would predispose a person to, a desire to have actual sexual contact with minors," Civ. Doc. 1-2 at 3, Dr. Kline's testimony at the sentencing hearing indicates otherwise. At the sentencing hearing, Dr. Kline testified that she had diagnosed Orr with a sexual disorder, not otherwise specified, meaning he had "a general diffuse sexual interest across a broad spectrum," with socio-affective deficits and hypersexual behaviors. Crim. Doc. 192 at 90. While at one point at the sentencing hearing Dr. Kline stated there was no evidence that Orr had a "predominant, preferential, or exclusive sexual interest in children," she explained that Orr "showed definitive sexual interest across [the entire] spectrum of . . . both genders, [and] all age categories," including prepubescent

16

children. *Id.* at 72, 90–91, 136–37, 140. It is unclear how such testimony would have been helpful to Orr's defense.

Further, even ignoring the inconsistencies in Dr. Kline's statements and assuming *arguendo* that the jury would have accepted her opinion that Orr had not been diagnosed with a condition that would have predisposed him to "a desire to have actual sexual contact with minors," Civ. Doc. 1-2 at 3, such testimony is irrelevant under Fed. R. Evid. 401 where, as here, a defendant is charged with enticement under 18 U.S.C. § 2422(b). *See United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) (stating that in order to prove a violation of 18 U.S.C. § 2422(b) when a defendant communicates directly with a minor, the government must prove the defendant intended to cause assent on the part of the minor, not that the defendant "acted with the specific intent to engage in sexual activity") (quoting *United States v. Yost*, 479 F.3d 815, 819 n.3 (11th Cir. 2007) (*per curiam*)); *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) (stating that the underlying conduct that 18 U.S.C. § 2422(b) criminalizes is the persuasion, inducement, enticement, or coercion of the minor, rather than the sexual act itself); *see also United States v. Hofus*, 598 F.3d 1171, 1179 (9th Cir. 2010) ("The proffered expert testimony in Hofus's case appears directed solely at the propensity to actually commit the underlying sexual act, which was not before the jury. But even if the 'fantasy

17

alone' testimony was offered to show an absence of intent to 'persuade, induce or entice' (as opposed to an absence of intent to commit the underlying sexual act, which is discussed above), then it goes to the ultimate issue the jury must decide, and was properly excluded under Rule 704(b).").

In addition, testimony about sexual fantasy and role-play in the internet community in general could have confused or misled the jury as to whether Orr was being tried for another offense rather than for attempting to induce a minor to engage in illegal sexual activity. *See United States v. Godwin*, 399 F. App'x 484, 488 (11th Cir. 2010) (*per curiam*) (finding that the district court did not abuse its discretion in preventing the expert from testifying that defendant was not a pedophile or sexual predator, because such testimony was not relevant to the elements of 18 U.S.C. § 2422(b) and would have confused or misled the jury as to whether the defendant was on trial for being a pedophile or predator rather than for the crime with which he was actually charged).  To the extent Orr argues that Dr. Kline's testimony would have provided the jury with knowledge and understanding of his defense that he believed he was engaged in internet fantasy and role-play, Civ. Doc. 1 at 28, that "is simply another way of saying he did not really intend to entice or persuade [a minor], which is precisely the question for the jury." *Hofus*, 598 F.3d at 1180.

Based on the foregoing, it was reasonable for Orr's counsel to forego Dr. Kline's testimony at the trial. *See Hardwick v. Crosby*, 320 F.3d 1127, 1162 n.146 (11th Cir. 2003) ("The decision whether to present a line of defense or even to investigate it, is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable." (internal citations and quotation marks omitted)).  Orr's challenge to his trial counsel's "strategic and tactical decisions . . . cannot be the basis for finding counsel ineffective." *Tejada*, 941 F.2d at 1559.  "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*).  Orr has not met his burden to show that counsel's decision was so unreasonable that no competent attorney would have chosen it.  Moreover, even if counsel's performance was deficient, Orr has not shown that such deficiency was prejudicial to his defense.  He has not demonstrated a reasonable probability of a different outcome if Dr. Kline had been called to testify at the trial.  Accordingly, Orr is not entitled to relief on this ground.

## V. CONCLUSION

Finding Petitioner advances no argument warranting relief under 28 U.S.C. § 2255, it is hereby **ORDERED**:

1.    The Motion (Civ. Doc. 1; Crim. Doc. 198) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk of Court** is directed to enter judgment denying the Motion and dismissing this action with prejudice, to terminate any pending motions, and to close the file.

3.    If Petitioner appeals this Order, **the Court denies a certificate of appealability**.[8]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of September, 2024.

_____
BRIAN J. DAVIS
United States District Judge

---

[8] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court will deny a certificate of appealability.

Jax-11 9/13
c:
Counsel of Record